[File No. 6662.]

BRADLEY C. MARKS, F. L. Conklin and E. L. Williams, Appellants, v. CITY OF MANDAN, NORTH DAKOTA, a Municipal Corporation, et al., Respondents.

ADA S. STUTSMAN and Charles Kidd, Interveners and Respondents.

(296 N. W. 34.)

Opinion filed August 7, 1940.   Rehearing denied January 6, 1941.

*L. J. Palda, Jr.,* and *Dullam & Young,* for appellants.

*Sullivan, Fleck & Sullivan,* and *C. F. Kelsch,* for respondents.

*W. H. Stutsman,* for interveners and respondents.

Morris, J. This is a special proceeding wherein the plaintiffs seek to compel the city of Mandan to levy a general tax upon all of the taxable property within the city to pay deficiencies in certain special improvement funds.

The trial court, after hearing the case, determined that the plaintiffs were not entitled to compel the city to levy the tax, and directed a dismissal of the proceedings with prejudice.

There are two cases between the same parties, except that the intervener Kidd does not appear in the second case. For convenience, and to avoid confusion, this case has been designated on the record and in the briefs as case No. 1, and the other as case No. 2. The basic difference between the two cases arises from the difference in dates on which the warrants were issued and the fact that the statute pertaining to deficiencies in special assessment funds was amended prior to the issuance of the warrant in the second case.

This case involves warrants issued by paving district No. 1 in the city of Mandan in 1916, and due serially upon various dates from 1924 to 1936. These warrants were issued to pay for improvements made under two separate contracts, but all within the same paving district. Also involved in these proceedings is a warrant issued in connection with the payment of the cost of construction of a street lighting system in street light district No. 1. This warrant is dated October 7, 1920, and is payable May 1, 1925. All these warrants bear interest at a designated rate which is within that authorized by statute.

The legality of these warrants is not questioned; no question is raised as to the procedure, either in letting the contracts for the improvements, or in issuing the warrants. It appears that all warrants are past due and have been presented for payment. They have not been paid, and considerable past due interest has accrued thereon.

It further appears that some of the special assessments levied against the property benefited by the respective improvements have not been paid; and that those assessments which have been collected are insufficient to pay the warrants issued against the respective funds; and that each of these funds is wholly exhausted.

It further appears that the city has made no provision for the payment of any of these warrants other than the special assessments; and that unless a tax is levied upon all the taxable property of the city for the payment of the deficiency existing in each of the funds, these warrants will remain wholly unpaid.

The plaintiffs contend that the city is obliged to levy such a general tax, and that they are entitled by mandamus to compel the levy.

This controversy resolves itself primarily into a matter of statutory construction. At the time the warrants were issued, § 3716, Compiled Laws 1913, was in effect. This section reads as follows: "Whenever all special assessments levied for a specific improvement shall have been collected and applied in payment of the warrants issued for such improvement, and a deficiency remains, the city council shall levy a tax upon all the taxable property in the city for the payment of such deficiency, and in case of a balance of such special assessments remaining unexpended, it may be used for repairs of such improvement."

In 1923 the above statute was amended and re-enacted by chapter 174, Session Laws of 1923, to read as follows: "Whenever all special assessments collected for a specific improvement are insufficient to pay the special improvement warrants issued against such improvement with interest, the city council or city commission, as the case may be, shall upon the maturity of the last special improvement warrant, levy a tax upon all the taxable property in the city for the payment of such deficiency, and in case of a balance of such special assessment remaining unexpended, it may be used for repairs of such improvement."

It will be noted that the warrants in controversy were issued prior to the amendment, but were not due until some time after the law had been amended.

The plaintiffs contend for two major points:

First. That § 3716 in its original form created an obligation on the part of the city to levy a tax upon all the taxable property in the city to pay for a deficiency in special assessment funds arising out of the inability of the city to collect special assessments.

Second. That even if § 3716 in its original form did not provide for such levy, the levy was provided for by the amendment of 1923; and that the amendment is applicable to care for deficiencies in funds creat-

ed, and upon which special assessment warrants were drawn prior to the amendment.

The city contends that § 3716, either in its original form, or as amended, should not be construed as creating a liability on the part of the city to make good to warrant-holders deficiencies arising from the failure of property owners to pay special assessments; that if the 1923 amendment should be construed as creating such a liability, it cannot be applied to funds created or warrants issued prior to its enactment.

The contentions of the plaintiffs are also resisted by two interveners. The intervener Ada S. Stutsman owns certain lots within paving district No. 1, upon which she was assessed for all the benefits conferred upon the lots by the improvement. She has paid all of these assessments. She contends that if § 3716 or its amendments are construed to authorize the levy of a general tax, that it is unconstitutional in that it impairs the obligations of the intervener's contract with the city and subjects her to double taxation; it deprives her of her property without due process of law; and that it violates provisions of the state constitution forbidding the taking or damaging of property for public use without just compensation, and forbidding the city to loan its credit or make donations.

She also contends that if the statute be construed as contended for by the plaintiffs, it will violate § 11 and § 176 of the Constitution, which requires that all laws of a general nature and tax laws shall be uniform in operation; and that it will also violate § 20, forbidding the granting of special privileges.

The intervener Charles Kidd is a citizen, resident, and taxpayer of the city of Mandan, owning real estate lying wholly without the legal boundaries of the special assessment districts herein involved, but within the city of Mandan, and subject to general taxation therein. He also contends that the levy of a general tax to pay special assessment deficiencies will violate his constitutional rights upon most of the grounds urged by the intervener Stutsman.

The first question to be determined is what the legislature meant when it enacted § 3716 in its original form.

In 1905 the legislature passed chapter 62 of the Session Laws of that year, being an act for the organization and government of cities. Section 3716 was § 156 of that enactment.

In Bankers Trust & Sav. Bank v. Anamoose, 51 N. D. 596, 200 N. W. 103, this court considered special assessment warrants issued in connection with the construction of water mains and sewers in the city of Anamoose. In considering §§ 3709 and 3711, N. D. Compiled Laws 1913, which originally were enacted as §§ 149 and 151 of chapter 62 of the Session Laws of 1905, the court said: "It is the evident purpose and intent of the statute to exempt the city from any general liability on account of the warrants so issued. We do not see how such purpose and intent could be more clearly and plainly expressed."

In discussing § 3716 in connection with §§ 3709 and 3711 as it appeared in the 1905 act, this court said in Schieber v. Mohall, 66 N. D. 593, 609, 268 N. W. 445, 453, that "There is nothing plainer in the whole chapter than that the city is not to be held responsible generally for the cost of the improvement."

It is argued, however, that § 3716, although not creating a general liability, does create a contingent liability of sufficient breadth to make the city liable for deficiencies in special assessment funds arising from the failure of the owners of property to pay legally assessed special assessments. The correctness of this contention can be judged only by an analysis of the language of the statute.

Authorities from other states are of little assistance other than to denote the general rules of statutory construction that are applicable. It may be generally stated that when a municipality levies a special assessment and uses due diligence to make it productive in accordance with the statutes under which it is levied, no further liability attaches, except such as may be specifically provided by statute. McQuillin, Municipal Corporations, 2d ed. § 2095.

Unless § 3716 provides a liability for the deficiency, the city of Mandan is not liable therefor. An examination of this section discloses an intent to require the city to levy a tax when, under certain conditions, a deficiency remains. That deficiency is the one remaining "Whenever all special assessments levied for a specific improvement shall have been collected and applied in payment of the warrants issued for such improvement." This section clearly does not contemplate providing for the payment of a deficiency that results from failure to collect, because, as a condition precedent, the right to levy the

general tax does not exist until all special assessments have been collected and applied.

In this case, the gist of the action is a deficiency which results from the failure of special assessment collections. This is obviously not a condition which results from such a deficiency as that contemplated by § 3716.

In the companion case between the same parties, but involving warrants issued subsequent to 1923, we decide that the amendment of § 3716 by chapter 174, N. D. Session Laws 1923, required the city to levy taxes for the payment of a deficiency such as the one herein involved, when that deficiency arose out of improvements made and warrants issued after the 1923 amendment became effective, post, 474, 296 N. W. 39.

We now come to the question of whether the 1923 amendment makes the city liable for such a deficiency arising from improvements made and warrants issued prior to the enactment of the amendment. This question requires the determination of the intent of the legislature. That intention must be sought first in the language of the statute. Ford Motor Co. v. State, 59 N. D. 792, 231 N. W. 883.

It is both a general and a statutory rule of construction that the legislature intends an act to operate prospectively only unless the contrary intention clearly appears. N. D. Comp. Laws 1913, § 4318; Blakemore v. Cooper, 15 N. D. 5, 106 N. W. 566, 4 L.R.A.(N.S.) 1074, 125 Am. St. Rep. 574; Warren v. Olson, 46 N. D 203, 180 N W 529; E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 922; Petters & Co. v. Nelson County, 68 N. D. 471, 281 N. W. 61.

Chapter 174, N. D. Session Laws 1923, is silent as to whether it shall apply to special assessment funds which have been created and against which warrants are outstanding, or whether it shall apply only to special improvement funds created and warrants issued thereon after the passage of the act.

In the instant case, the improvements had been made, warrants had been issued, and a sum sufficient to pay the warrants had been levied against the property benefited by the improvements.

"Special assessment warrants are creatures of the statute, and are issued and received in pursuance of statutory provisions, and the holders and owners thereof are chargeable with notice of such provisions of

the statute as fully as if set forth and at large in the warrants and each of them." State ex rel. Bithulitic & Contracting v. Murphy, 20 N. D. 427, 431, 128 N. W. 303, 304. See also 17 C. J. S. 782; 12 Am. Jur. 769, Contracts.

Under the law as it existed at the time these warrants were issued, the purchasers were not entitled to look to the city for ultimate payment should the owners of the property fail to pay. They purchased the warrants under the law as it existed at the time of their issuance. There was no obligation upon either the city or the state, legally or morally, to provide a further and additional guaranty of payment. It cannot be said that the imposition of a general liability by the legislature upon the municipality added to the marketability of the warrants, for they had already been sold.

Should the statute in .question be construed to apply to warrants already issued, we would impliedly hold that the legislature intended to furnish warrant-holders with added security for their warrants, and to place upon the general taxpayers of the city an added burden in meeting deficiencies in warrant obligations, when at the time the warrants were sold, neither the purchasers nor the general taxpayers contemplated such liability.

We believe that the legislature had in mind only future special improvements and warrants issued in payment thereof when they passed chapter 174, N. D. Session Laws 1923. The legislature's intention was in accord with the general rule of statutory construction established in this state and elsewhere by the decisions and statutes.

The legislature having omitted to specifically declare that the amendment applied to warrants already issued, we conclude such omission was intentional and speaks in behalf of the construction that the amendment was intended to operate prospectively only.

In Stanley v. Great Falls, 86 Mont. 114, 284 P. 134, 70 A.L.R. 166, the court had under consideration a statute empowering a municipality to levy a general tax to create a revolving fund for the purpose of securing the prompt payment of special improvement district bonds or warrants.

In dealing with the question as to whether the act applied to special improvement district bonds and warrants issued prior to the date thereof, the court said:

"The purpose of the act, in so far as it authorizes the assumption of liability for losses suffered by the holders of bonds and warrants issued prior to the passage of the act, must be held to be reimbursement of those holders for such losses, and, although it is urged that such action would tend to rehabilitate the city's credit, such a purpose, if it existed, must be held to be the secondary or incidental purpose. It is not even clear that action was necessary for such secondary purpose. Proposing purchasers of bonds and warrants look only to the present condition of the law, and therefrom determine whether or not such bonds and warrants furnish a reasonably safe investment; it can hardly be presumed that the fact that other investors have suffered loss under a different condition of the law would deter proposing investors from purchasing bonds and warrants in the future.

"As it clearly appears that the portion of the Act now under consideration authorizes the levy and collection of taxes for a private purpose, it is violative of § 11, Article 12 of the Constitution, and cannot stand."

From the decision in the foregoing case, it appears that a construction which would hold chapter 174, N. D. Session Laws, 1923, applicable to warrants issued prior to its enactment would present, to say the least, a very serious question of constitutionality. See also Oregon Short Line R. Co. v. Berg, 52 Idaho 499, 16 P. (2d) 373.

The principle is well established in this state and elsewhere that in event there are two possible interpretations of a statute, by one of which the statute would be clearly constitutional, and by the other it would be of doubtful constitutionality, the court will avoid that construction which would leave the constitutionality of the statute in doubt. State v. Burleigh County, 55 N. D. 1, 212 N. W. 217; State v. Osen, 67 N. D. 436, 272 N. W. 783; Wood v. Byrne, 60 N. D. 1, 232 N. W. 303.

It is argued that although the warrants were issued and assessments made before the law became effective, that the deficiency did not occur until some time after the amendment went into effect; and that thus, under, a prospective operation of the statute, the plaintiffs are entitled to require the city to make good the deficiency by general taxation.

We cannot agree with this contention. The rights of the warrant-

holders were fixed by the old law. To give the statute the construction contended for would be to enlarge the rights of the warrant-holders at the expense of the city, with reference to a past transaction and in a manner not contemplated by the parties at the time the transaction was consummated. We determine that the amendment was addressed to future and not to past transactions.

The plaintiffs are not entitled to a writ of mandamus in this case. It is unnecessary to pass upon the constitutional questions. They are not involved under the foregoing construction of the statutes as applied to the facts in this case. These questions of constitutionality are also urged in the second case, wherein they are pertinent; and they are considered in that decision.

Affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.