CARSON *v.* MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE.

4-8447                                    209 S. W. 2d 97

Opinion delivered February 23, 1948.

Rehearing denied March 29, 1948.

*Kenneth C. Coffelt*, for appellant.

*Henry Donham* and *Pat Mehaffy*, for appellee.

ROBINS, J. The sole question is whether appellant is owner of bauxite deposit on forty acres in Saline county, upon which he has been living for fifty-six years, or whether appellee owns same by virtue of a reservation in the contract of sale and in the deed by which its predecessor conveyed the land to appellant.

On August 21, 1892, appellant bought this land from appellee's predecessor in title, St. Louis, Iron Mountain & Southern Railway Company, and entered into a written agreement of purchase with it by which he agreed to pay for it the sum of $129. This agreement contained the following reservation, which also appeared in the deed executed by the railway company to appellant, dated January 6, 1896: "Reserving also unto the said St. Louis, Iron Mountain & Southern Railway Company, its successors and assigns, all coal and mineral deposits in and upon the said lands, with the right to the said party of the first part, its successors and assigns, at any and all times to enter upon said lands, and to mine and remove any and all coal and mineral deposits found thereon, without any claim for damages on behalf of said second party, his heirs or assigns."

On trial in chancery court, where each party asked for decree quieting title in the bauxite deposits, appellant introduced numerous elderly residents of Saline county, who testified that existence of bauxite deposits in that locality was unknown at the time appellant purchased the land in 1892.

Appellant, who was 81 years old, testified that he was a farmer and bought the land for a home; that he had lived on it and paid taxes on it since 1892. He further stated that there was no mineral reservation in the contract and that when he bought the land he had never heard of any bauxite in that vicinity.

Appellee's evidence consisted of copies of historical tracts, newspaper articles and advertising folders, in which reference was made to bauxite mining in Arkansas, and also copies of recorded leases and deeds pertaining to bauxite deposits.

It was stipulated that appellant had paid all taxes assessed against the land since his purchase thereof, but that since the passage of the Arkansas law requiring separate assessment of mineral rights appellee had assessed and paid taxes on such rights as to the land sold to appellant.

The lower court by its decree quieted title of appellee to the "bauxite ore in or under or that may be produced from" the land in question as against any claim of appellant. This appeal ensued.

A reservation in a conveyance by the railway company executed in 1892, identical with the reservation involved herein, was considered by this court in the case of *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Strohacker,* 202 Ark. 645, 152 S. W. 2d 557, decided May 26, 1941. In that case the railway company insisted that under this reservation it had title to gas and oil deposits in certain lands in Miller county. This court, in its opinion, reviewed the authorities on the question and concluded that "if the reservations had been made at a time when oil and gas production, or explorations, were general, and legal or commercial usage had assumed them to be within the term 'minerals', certainly appellant [the railroad company] should prevail." But the court declared: "Although there were court decisions holding oil and gas to be minerals, such was not the general construction; and this was particularly true in a country where oil and gas were not given the slightest commercial consideration in connection with land values. 'All coal and mineral deposits' undoubtedly were thought to mean, in addition to coal, deposits of substances commonly recognized as minerals; and as to such the reservations are good." In that case we held that this reservation was not sufficient to cover oil and gas.

966

In the case of *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Furqueron,* 210 Ark. 460, 196 S. W. 2d 588, we were asked to overrule our decision in the Strohacker case, *supra,* which we declined to do.

In the Strohacker case it was shown that oil was discovered in the United States in Pennsylvania on August 29, 1859; later, in 1860, in Kansas; in Colorado in 1862, in Wyoming in 1867, in California in 1875, in Indian Territory in 1891, and in Texas in 1887; and that the possibility of existence of oil in Arkansas was recognized as early as 1885. The earliest reported case, involving oil or gas in Arkansas, was decided in 1911. Under this factual situation we held in the Strohacker case that recognition of oil and gas as minerals was not sufficiently general in this part of the country in 1892 to authorize a holding that these deposits were contemplated in the reservation used in the deed of the railroad company involved in that case.

According to the proof offered by appellee below the existence of bauxite in Arkansas was not announced until 1891. One of appellee's exhibits was an article published in the "Journal of Geology" in April, 1897, by Mr. J. C. Branner, in which it was said: "The geological survey of Arkansas was begun in June 1887. In that month I discovered some of the bauxite beds of Pulaski county, but the nature of these deposits was not announced until January, 1891, when I gave [in a letter to Governor James P. Eagle] a short account of their distribution and character."

Appellee introduced copies of a number of leases and conveyances found on record in Saline county in which there appears a mention of bauxite or bauxite operations. The earliest of these was executed on August 31, 1895.

There is no proof that existence of bauxite in Arkansas was generally known in 1892; in fact the commercial use of bauxite is of comparatively recent origin in the United States. Certainly the general exploration for and use of petroleum in the United States antedated that of bauxite.

While bauxite may be said to be a mineral it differs in an important aspect from ordinary minerals. It is a clay formation which contains alumina in very small particles. This alumina is extracted by a complicated refining process and forms the basic ingredient of aluminum.

"Bauxite is a term given to an earth that contains alumina in sufficient quantities to make it worth working for the extraction of aluminum." *American Bauxite Company* v. *Board of Equalization of Saline County*, 119 Ark. 362, 177 S. W. 1151.

Generally, the operation of mining bauxite is not a subterranean one, but is accomplished by digging of open pits. *Sovereign Camp Woodmen of the World* v. *Arthur*. 144 Ark. 114, 222 S. W. 729. Manifestly, such an operation would destroy the value of the land for farming purposes, or any other purpose. To give the contract between appellant and the railroad company the construction asked by appellee we must hold that Carson and the railroad company entered into a contract in 1892, by which the railroad company would have had the right. (assuming that the bauxite was to be removed by the open pit method) the day after Carson paid for his farm home, to enter upon it and utterly destroy its value without any liability upon the part of the railroad company for damages. Such a construction, under the situation of the parties shown here, would be an extremely unreasonable one. A reservation as broad as the grant is ordinarily void. 26 C. J. S., Deeds, p. 447, § 139.

We conclude that the rule announced in the Strohacker case, *supra*, as well as the unreasonableness, under the circumstances, of the construction asserted by appellee, requires a holding that bauxite was not in the contemplation of the parties to the contract when this reservation of mineral rights was made.

It follows that the decree of the lower court must be and is reversed and the cause remanded to the lower court with directions to enter a decree quieting title in appellant to the bauxite on the land described in the complaint.

McHANEY, HOLT and McFADDIN, JJ., dissent.