**ELDRIDGE et al. v. EDMONDSON et al.**

**No. 2947.**

Court of Civil Appeals of Texas. Eastland.

Oct. 24, 1952.

Rehearing Denied Nov. 14, 1952.

C. O. McMillan, Stephenville, for appellants.

Frost & Frost, Eastland, for appellees.

PER CURIAM.

Appellees brought this suit, the purpose of which was to recover as mineral royalty an undivided one-half nonparticipating royalty interest in limestone on the Southwest ¼ of Section 19, and the Southwest ¼ of Section 22, in Block 2, H. & T. C. Ry. Co. Survey in Eastland County, Texas, and located near the town of Carbon. They sought also to recover the sum of $9,511.20 royalty for limestone removed from said land. There is no dispute as to whether appellees held a nonparticipating royalty interest in the minerals under the land but there is a dispute as to whether such nonparticipating royalty interest includes royalties from limestone quarried from the land.

The land involved was conveyed to appellants, C. S. Eldridge and wife, Mae Eldridge, by general warranty deed executed by J. W. Edmondson, one of the appellees, and A. A. Edmondson, the ancestor of the other appellees. The deed contained the following reservation:

"There is excepted from this conveyance, and retained by the grantors, their heirs and assigns, a non-participating royalty interest of one-half of the royalty from all oil, gas, casinghead gas and other minerals, whether similar to those named or not and whether known to exist or not, which may be produced on said premises. Grantors shall not participate in any bonus or rentals which may be paid for lease or leases hereafter to be executed, but shall be entitled to one-half of all royalties paid or to be paid under said lease or leases. The joinder of grantors, their heirs or assigns, shall not be necessary to the execution of any such lease or leases, but such right shall be exclusively exercised by grantees, their heirs or assigns."

On January 9, 1948, Eldridge executed a lease to Waco-Tex Materials Company, which lease provided that the lessee might remove stone or rock and crush the same and provided for a royalty of 2¢ per ton. Acting under this lease, Waco-Tex did remove and sell 951,000 ton of limestone rock and the royalty therefrom amounting to $19,022.39, one-half thereof being $9,511.20, the amount sued for herein. The court submitted the case to a jury upon special issues and based upon the answers of the jury thereto, judgment was entered in favor of appellees for one-half of said royalty. From this judgment appellants have appealed.

Appellees, in the trial court, and in this court, rely on the following statement by the Supreme Court in the case of Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, 997:

"In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement."

The jury found that the limestone in question is of such quality that it may profitably be manufactured into cement. The jury also found that the limestone is of such quality that it may profitably be manufactured into cement, lime, fillers for paint, chinaware, paper, soda ash, baking soda, glass, lime for water treatment, water paints, grease, pigments, carbon dioxide, flux for making steel, agricultural lime, livestock mineral supplement and leather. At the conclusion of the evidence, appellants moved the court to instruct the jury to return a verdict in their favor. After the return of the verdict there was filed a motion for judgment notwithstanding the verdict. They also excepted to the charge of the court in submitting to the jury the special issues upon which the judgment is based on the ground that there was not sufficient evidence to authorize their submission to the jury and no competent evidence to authorize their submission.

Appellants urge as ground for reversal the action of the court in overruling their motions for an instructed verdict, for judgment non obstante veredicto and in overruling their exceptions to the court's charge. The question for our determination is, was the limestone involved a mineral within the meaning of the reservation in the deed. It seems to be the well-settled law that the word "minerals" as used in a deed does not ordinarily include limestone. Heinatz v. Allen, supra; Rudd v. Hayden, 265 Ky. 495, 97 S.W.2d 35.

Appellees argue that the evidence shows the limestone in question was of such quality that it could be manufactured into cement at a profit and, therefore, under the holding in the Heinatz v. Allen case, was minerals and came within the reservation in the deed. The evidence discloses that this limestone rock was removed from the

ground, placed in a machine and crushed and then loaded on railroad cars and transported to the Whitney dam near Waco; that it was used in the construction of said dam as crushed rock mixed with cement to make concrete. It was not used to make cement or any of the substances inquired about in the special issues submitted to the jury. Hon. Joseph M. Perkins, an eminent geologist of Eastland, testified that the limestone was of high quality and that it could be used in the manufacture of cement and the other substances inquired about. Another geologist, Mr. Dunning, testified substantially to the same effect. However, we believe there is no evidence of probative value tending to show that the limestone involved could be manufactured into cement or any of the articles at a profit. On this question, Mr. Perkins testified as follows:

"Q. Were you ever engaged in the manufacture of cement? A. Never.

"Q. You couldn't tell us about the costs incident to manufacturing cement from limestone such as this, could you? A. No, I am not prepared to tell about the cost of cement manufacturing.

"Q. And you couldn't say whether that could be done out of this pit at a profit, or not, could you? A. Well, I can say that if there was a cement mill in the neighborhood, and if this high grade limestone were available cement could be manufactured out of this at a profit.

"Q. Would you say that you would recommend putting a cement plant down there? A. No, I wouldn't recommend a cement plant at any particular point unless there was some reason other than the presence of the high grade limestone.

"Q. And there is no cement plant at Carbon, or near Carbon, is there? A. No, there is not.

"Q. To take the limestone out and ship it to the nearest cement plant, would greatly increase the cost of the limestone by the time it reached the plant, would it not? A. Well, that depends on the distance to the plant and how available any other limestone might be to the same plant. It's conceivable that this limestone might be the logical limestone to be used.

"Q. Well, there's a cement plant at Dallas, Texas. Do you know how much the freight would be on a ton of this rock from Carbon to Dallas? A. No, I do not, but I know that you get the limestone for the cement plant at Dallas practically at the plant site. It's right there, so there would be no point in hunting up a freight rate from here."

There was no evidence that any of the other articles that the jury found could be manufactured from this limestone could be manufactured at a profit. It will be noted that Mr. Perkins testified that there was no cement plant at or near Carbon. There is no evidence that there is any likelihood of a cement plant being located at or near the land in question. If the theory of appellees be correct, that the limestone is of such high quality that it would be useful in the manufacture of cement and the other products, still the evidence falls short of showing that there is any market available for the cement or the other products or that it could be so manufactured at a profit.

■ It seems to be well settled that limestone used only for building purposes or as a building material is not classed as a mineral under a reservation in a deed such as we have here. Heinatz v. Allen, supra; Psencik v. Wessels, Tex.Civ.App., 205 S.W.2d 658; Winsett v. Watson, Tex. Civ.App., 206 S.W.2d 656.

■ The limestone involved was used as a building material in the construction of the Whitney Dam. The evidence does not bring it within the rule announced in the Heinatz case, and, therefore, we hold that it is not mineral within the reservation of the deed. The trial court erred in refusing to instruct a verdict for appellants.

■ There is another reason which supports our conclusion that the limestone was not intended to be included in the reservation of the deed as a mineral. The lime-

stone is recoverable only by the open pit method which destroys the surface for agricultural and grazing purposes. The evidence shows that the surface of the land where the limestone was removed is destroyed. This fact is not decisive of the question but is a factor which we believe should be used in determining whether limestone is included in the reservation of the minerals. Heinatz v. Allen, supra; Beury v. Shelton, 151 Va. 28, 144 S.E. 629; Brady v. Smith, 181 N.Y. 178, 73 N.E. 963, 106 Am.St.Rep. 531, 2 Ann.Cas. 636; Carson v. Missouri Pacific R. Co., 212 Ark. 963, 209 S.W.2d 97, 1 A.L.R.2d 784, and Note pp. 787, 798.

The case seems to have been fully developed and we know of no reason why it should be remanded to the trial court for a new trial. Therefore, it becomes our duty to reverse the judgment of the trial court and here render judgment in favor of appellants.

Reversed and judgment rendered for appellants.